## GODWIN ET AL. vs. YONGE.

1. When a bill is filed by a married woman against her trustee and certain judgment creditors of her husband, to reform a deed alleged to have been intended to convey the property in trust for her sole and separate use, and to appoint another trustee, and decrees *pro confesso* are taken against all the defendants except the trustee, who answers that he knows nothing about the alleged mistake, the clear and direct testimony of one witness is sufficient to authorize the reformation of the deed.

2. In such case, the trustee, after having taken on himself the execution of the trust, cannot allege fraud in the execution of the deed, as a defence against the relief sought by the bill.

ERROR to the Chancery Court of Russell.

Heard before the Hon. W. W. MASON.

This bill was filed by Mary A. Yonge, wife of William C. Yonge, (by her next friend, John Godwin,) against Wells Godwin, and certain judgment creditors of her husband, viz: L. M. Wyley & Co., Daniel F. Fleming, and Kelsey & Deas.

The bill alleges, that Wm. C. Yonge, in 1847, made a deed of certain slaves to Wells Godwin, in trust for complainant, and that said Wells took upon himself the trust; that the

36

deed was intended by the grantor to be made for her sole and separate use, not subject to the debts and contracts of her husband; but, that through the inadvertence of the person who drew the deed, apt words were not used to effect this object; and that, in the shape in which the deed now stands, the property may be made subject at law to the debts of her said husband.

It further alleges, that, by consent of the parties in interest, some of the slaves mentioned in the deed of 1847 were sold by Wells Godwin, the trustee, and others purchased in their place, and the deed taken in the same defective manner, in 1848; that these last mentioned slaves, so exchanged as aforesaid, have been levied upon by virtue of an execution in favor of the several other defendants before mentioned, creditors of her husband, and claimed for plaintiff under the statute by her next friend; that, after the rendition of the judgments in favor of the other defendants to the bill, the said Godwin resigned his trusteeship, and was instrumental in causing executions to be levied on the property; that these judgments were rendered at January term of the County Court of Russell in 1849; and that they have been mostly, if not altogether, paid.

All the defendants, except Godwin, are shown to be nonresidents.

The bill prays, that the deeds may be reformed so as to vest in plaintiff a separate estate in the property embraced in them; that another trustee may be appointed in place of defendant Godwin; and that the judgment creditors of Wm. C. Yonge may be enjoined for the present from proceeding with their claim suits, and at the hearing perpetually enjoined.

Publication was made in due form, as to all the defendants, except Godwin. All appeared at the hearing by counsel, but he alone answered the bill.

Godwin, in his answer, admits the making of the deed in trust, of which a copy is appended to his answer, by which it appears he accepted the trust in writing at the foot of the deed. He says that he accepted the trust only on the express understanding with the grantor, who was then his partner in merchandizing, that all the debts of the firm then due, or afterwards to be contracted, should be first paid, before any

estate should vest in the *cestui que trust;* that he knows nothing of any inadvertence in the drawing of said deed; that he knew nothing of the deed until after it was made, and was only a nominal trustee; that the property always remained with and under the control of the grantor; that as to the making of the deed in 1848, or the sale or exchange of slaves, he knows nothing, and did not know it was made until several months after it was made, and never consented to any sale or exchange. He admits that he has paid on the debt of Wiley & Co. ($53 in amount) the sum of $40; on the debt of Kelsey & Deas ($363) all but about $118; on the debt of Fleming ($456) all but about $143. One of these debts, the answer says, was contracted before the date of the first deed, to-wit: 1st of September, 1846, but which one is not shown. He denies any combination in having executions levied on this property, but admits that he wanted the property of Yonge levied on to pay the firm debts, as well as his own, and so said to the sheriff. Judgment *pro confesso* was taken as to all the other defendants.

The testimony of one Harris, who drew the deed of 1847, is quite clear and explicit, as to the intention of the grantor; that it was his design to have the deed so made that the property should be to the separate use of his wife, and not subject to his debts or contracts. Besides this, one of the witnesses of the defendants, on cross-examination, being questioned as to the declarations of Wm. C. Yonge, says, he heard him declare that such was his intention.

There is some proof going to show that Wm. C. Yonge, as one of the firm of Yonge & Godwin, was indebted at the time the deed in 1847 was made, but nothing to show that any of the debts due to the defendants were then due. There is also some proof tending to show that Yonge made this deed in expectation of being sued for an assault and battery on one Lawrence, and to avoid the payment of a judgment in such suit, should any be rendered.

There was a demurrer to the bill, and a motion to dismiss for want of equity, which was refused.

The Chancellor decreed: 1. That the deed in trust should be so reformed as to create in the plaintiff a separate estate; 2. That a new trustee should be appointed; 3 That the de-

fendants, Wiley & Co. and the others, should be perpetually enjoined from proceeding with their claims suits against this property.

The decree of the Chancellor is assigned for error.

J. E. BELSER, for plaintiffs in error :

The deed should not be reformed on the testimony of Harris alone, against the denial in the answer. It should not be reformed, because it was made to defraud creditors; because the proof shows that some of the negroes were sold, and there is no evidence that those levied on were purchased with the proceeds of sale.

The trustee is not estopped from showing that the deed should not be reformed, against the debts for the payment of which he was bound with Yonge.

WHITE & PARSONS and GEO. D. HOOPER, *contra:*

The trustee is the only person who assigns error, and he cannot be heard under the pleadings and proof. He accepted the trust, and cannot now repudiate it. Conyngham v. Conyngham, 1 Vesey sr. 522; 1 Ala. 372; Lewin on Trusts, 118, (232;) 20 John. 142. Therefore, he cannot be permitted to place himself in opposition to the rights and interests of the trust, or seek to set it aside, even if it were fraudulent as to creditors. Roden v. Murphy, 10 Ala. 804; Marler v. Marler, 6 ib. 367; Eden v. Wilson, 1 ib. 239.

Property in a trust deed may be substituted for other property, and that thus received will be held subject to the trust. Wallace v. Long, 16 Ala. 741.

PHELAN, J.—1. The proof going to establish the mistake in drawing the deed in trust from Yonge to Wells Godwin, for the benefit of Mrs. Yonge, is altogether sufficient to call for a decree reforming the deed, so as to make it correspond with the intention of the maker at the time it was executed. Godwin answers, that he does not know anything about it, and the other defendants make no answer; and in such a case, the clear and direct testimony of one witness would suffice. But in addition to the testimony of Harris, who drew the deed, we have to this point the declarations of Yonge himself, elicited from John Godwin on cross-examination.

2. Wells Godwin admits his resignation of the trust. To reform the deed, then, and appoint another trustee, was manifestly the duty of the Chancellor.

3. But it is argued, that there is testimony going to show that Yonge was indebted at the time he made this deed; and furthermore, that there is proof tending to show that the deed was made with intent to "hinder, delay and defraud" creditors; and that it was the duty of the Chancellor, in view of this proof, to have refused the relief sought, and dismissed the bill, on the ground that the deed, whether it bore one shape or the other, was fraudulent and void as to creditors.

The decree must be based on the allegations of the bill. Gresley's Eq. Ev. 158, 161. The *bona fides* of the deed is not put in issue by the bill; and if fraud in the making of it was any defence against the relief sought, it would only be so as to the judgment creditors, and they have not answered or set up such a defence in any way.

It did not lay in the mouth of Godwin, who was a trustee, and had taken upon himself the trust, to allege fraud in the making of the deed, as a defence to the relief sought as to him, which was only the reformation of the deed, and the appointment of another trustee.

The proof, then, going to show that the deed was made in order to avoid the payment of a judgment, which might be recovered in a suit for assault and battery by some one against Yonge, and of which he stood in fear at the time he made the deed, is not in pursuance of any allegation, and goes for nothing. Such a motive would vitiate a deed, undoubtedly; but it must be upon formal complaint, by some one who is entitled to take advantage of the defect. The same remarks are applicable to the proof that Yonge was indebted at the time he made the deed. There is not any proof that the debts upon which the judgments brought to notice in this case are founded, were then owing by Yonge; and although this, if true, would make the deed fraudulent as to such creditors, yet, proof, without allegations from some authorized source, goes for nothing. The judgment creditors did not answer the bill, and, so far as Godwin was concerned, it was no defence to the relief sought against him.

4. The allegations of the bill, that the judgments under

which the executions issued had been wholly, or for the most part, paid, are not answered by the other defendants, whom they chiefly concern, and as to them, therefore, must be taken to be true. And the answer of Godwin to this point does show, that much the larger part of the judgments has been in fact paid.

In view of all this, we think the Chancellor very properly decided to make perpetual the injunction against the proceedings at law to subject the property.

There is no error in the record, and the decree below is affirmed.