# Randle *et al. v.* Carter, *pro ami.*

*Bill in Equity to vacate Proceedings in Probate Court, &c.*

1. *Pecuniary legatee; when equity will interfere with executor, to secure legacy.*—Formerly, it seems, equity would not interfere at the instance of a pecuniary legatee, whose legacy was payable in the future, to compel the executor to give security for its payment, or to pay it into court, unless the legacy was absolute ; but the modern doctrine is that the court will intervene, though the legacy is contingent, if sufficient reason be shown for such interference ; whether in the one case or the other, the legatee's right to relief depends on the existence of assets liable for the satisfaction of the legacy, which it is the executor's duty to hold for its payment, when it is due.

2. *Removal of administrator, power of Chancery Court to decree ; when should not be done.*—Whether, in any case, the Court of Chancery can remove an administrator, deriving authority from a grant of letters by the Probate Court, is not decided ; but if it has such power, only an extreme case will justify its exercise, and the removal can not be made, unless fraud or some distinct ground of removal in the Probate Court is clearly shown.

3. *Same ; what does not justify.*—The fact that the interest of distributees conflict, and that the principal or residuary legatee stands in the attitude of adversary to pecuniary or demonstrative legatees, or to specific devisees, does not deprive the next of kin, or the residuary legatee, of priority of right to administration ; and such antagonisms of themselves, in the absence of misconduct, can not justify the removal of the administrator.

4. *Receivers ; when power of appointing should not be exercised by Chancery Court.*—In general, creditors, legatees, or next of kin, can obtain ample protection against loss, and security for faithful administration, by a resort to the Probate Court ; and hence, though a court of equity has jurisdiction to appoint a receiver of assets, practically taking the administration into its own hands, it will not exercise this jurisdiction, unless there is manifest danger of loss, which may be irreparable.

5. *Decree of insolvency ; who can not assail.*—A decree of insolvency merely ascertains, as between the personal representatives and the *creditors*, the status of the estate ; as to next of kin, or legatees, it is *res inter alios acta*, not affecting their rights, and not evidence against them of any fact ascertained by it ; and its validity is not affected, because legatees were not parties to the proceedings ; and hence they can not assail it for fraud.

6. *Insolvent estate ; decree of Probate Court on claims filed against; effect of ;*

[Randle et al. v. Carter, pro ami.]

*who may assail.*—The ascertainment of the validity and amount of the demand of a creditor, in the course of proceedings in insolvency in the Court of Probate, has the force and effect of a judgment *in personam* against the personal representative, obtained in the regular course of proceedings in a suit at common law, by a creditor ; and as against legatees, who claim in privity with the personal representative, is *prima facie* evidence of the debt ; and the legatee may assail such judgment for fraud, or when the administrator claims credit for it, show that defenses existed, and by proper diligence he could have prevented it from being obtained.

7. *Sale of devised lands ; who can not complain of.*—Although a sale of lands devised by the executor, may be void, as to the devisee, and the lands chargeable with a pecuniary legacy to complainant, such legatee can not complain of it, or have it set aside, when the devisee acquiesces, it not being shown that the lands sold for a sum disproportionate to their value, or would sell for more on a resale, or there had been a misapplication of the proceeds to the injury of the legatee.

APPEAL from Bullock Chancery Court.
Heard before Hon. B. B. McCRAW.

This was a bill filed by the appellee, Kate Carter, by next friend, against the appellants, E. Troupe Randle, Mary A. Randle, and others, who are respectively the administrator, heirs-at-law, and the creditors of James F. Carter, deceased.

The bill alleges that James F. Carter died testate, in Macon county, Ala., in January, 1866, leaving a last will and testament, which was duly admitted to probate, and possessed of a large estate, both real and personal. This will contains the following item : " I further will that my boy Beauregard, and his sister Kate, to be educated North, and their expenses paid out of my estate, and the sum of five thousand dollars to be given each one of them after they are twenty-one years of age." At the time of the death of said Carter, he had only one child—Mary A. Carter—who subsequently married E. Troupe Randle, and was his sole heir-at-law. The executor, appointed by the will of said Carter, had died, and E. T. Randle had been appointed administrator *de bonis non.*

The bill further alleged that Beauregard had died intestate, leaving the complainant his sole heir at law.

The bill then charges that, at the time of his death, Carter was seized and possessed of a very large estate, both real and personal, and that the value of the property owned by him at his death, was greater by eighty thousand dollars than the liabilities then outstanding against him or his estate, and that the property owned by him in the State of Alabama was greater by forty thousand dollars than the debts of the deceased ; that, besides the property owned by him in Alabama, he was possessed of property outside of the State of the value of thirty thousand dollars ; that his estate had never been insolvent, and that the decree of insolvency of

said estate, which had been declared and decreed by the Probate Court of Macon county, were the "direct offspring of the wasting and maladministration of the estate, by the administrator *de bonis non* thereof, the said E. Troupe Randle, and was the immediate result of his failure to disclose to said Probate Court, and to bring within the powers of said Probate Court a large amount of property really belonging to said estate, which he knew, or had notice of, and which, by any just and faithful exercise of his duties and powers as administrator, he could have brought within the power and control of said Probate Court, and have made available to the creditors and legatees of said estate; that the said declaration, as well as each and every decree or order made by the Probate Court since the appointment of Randle, had been obtained and procured by fraud and imposition on his part in the Probate Court, and by his withholding from that court the real condition of said estate, and by over-estimating the liabilities of the estate and undervaluing its assets. The bill further charges that shortly after the appointment of the said Randle as administrator *de bonis non*, his wife, the said Mary A., filed her bill in the Chancery Court of Macon county, Alabama, against the said Randle, alleging that the said Carter had, in his life-time, received, as her trustee, under the will of her grand-father, N. B. Powell, a large amount of property belonging to her, for which he had never accounted, and that such proceedings were had in said Chancery Court that a decree was rendered in her favor for a large sum. The bill then charges that this claim was unfounded and untrue; that no will of said N. B. Powell had ever been admitted to probate until long after the death of said Carter, and that Carter never was trustee for said Mary A. under any will or otherwise; that neither the complainant or her brother, Beauregard, were parties to this suit, or had any notice thereof, and that the same was null and void as to them, and that these proceedings were part and parcel of a fraudulent intent on the part of said Mary A. and her husband, the said E. Troupe Randle, to defraud complainant out of her just rights under the will of said Carter; that at the time said Mary instituted her suit, more than eighteen months had elapsed since the grant of letters under the will of said Carter, and that the said E. Troupe Randle fraudulently neglected to defend said suit on such ground, and permitted said decree to be rendered against him in her favor.

It was shown that N. B. Powell, the grand-father of the said Mary A., died testate in Macon county, Alabama, in 1862, leaving a will by which he bequeathed certain property

to said Carter in trust, and that under and by virtue of said will, Carter received the property, giving the executors of said N. B. Powell a receipt for the same, and that he had never accounted for the said property so received up to the time of his death. And E. Troupe Randle, in his sworn answer, testifies on information and belief, that shortly after the death of said N. B. Powell, who at that time resided in a part of Macon county which has since been transferred to Bullock, the will of said Powell was duly admitted to probate in the county of Macon, and that the executors therein named qualified and took possession of the property of said Powell, and proceeded to execute his said will, and that while the executors were thus acting, and after the proceeding in the Probate Court of Macon county, Carter received from them the property bequeathed to him in trust for the said Mary A. After the death of said James A. Carter, it was ascertained that no order, entry or decree had been made upon the minutes of the Court of Probate of Macon county, and upon legal advice the will of said Powell was propounded and admitted to probate in Bullock county.

The bill then charges that the administrator had fraudulently combined with the creditors of the estate, after the same had been declared insolvent, and had allowed claims to be established against the estate which were barred by the statute of non-claim, paying the same for a sum greatly less than the amount allowed, and claiming credits largely in excess of the amount paid. The bill also charges that the administrator had sold lands belonging to the estate of said Carter under void orders of the Probate Court of Macon county, and had received the purchase-money, and put the purchasers in possession, in furtherance of his fraudulent intent to deprive complainant of her just rights under the will of said Carter.

The prayer of the bill is that the said E. Troupe Randle be required to disclose, under oath, what property belonging to the estate of said Carter had come into his possession, and what disposition he had made of the same; that he be required to disclose what property, if any, had come to his knowledge or control which belonged to the estate of said Carter, situated outside of the State of Alabama. That certain creditors of said Carter, who are made parties defendant, be required to propound their claims, and that a decree be rendered ascertaining what is justly due them; that the sales of the lands belonging to said estate be set aside and declared null and void; that the report and decree of insolvency of the estate of said Carter, and each settlement and decree by said Probate Court binding on said estate since E.

T. Randle became the administrator, be declared null and void and vacated; that the administration of the estate of said Carter be removed from the Probate Court of Macon county to the Chancery Court of Bullock county, and that a settlement of said estate be there had ; that said E. T. Randle be removed from the administration of the estate of said Carter, and that a receiver be appointed to take charge of the assets of said estate, and for general relief.

The defendants, E. T. and Mary A. Randle, were required to answer under oath, and they filed sworn answers denying every allegation of fraud, collusion, or maladministration, averring that the estate had been faithfully and honestly administered in every respect.

The said Mary A. filed a cross-bill, which the Chancellor dismissed, but in the view which the court take of this case, further mention of it is unnecessary. It was admitted, by counsel, that the said Mary A. was the sole heir-at-law of said Carter. The only testimony for the complainant was a transcript from the Probate Court of Macon county showing the various orders and decrees made in the conduct of the administration, and the depositions of certain witnesses to establish her identity as the person named in the will of said Carter. No evidence was offered by her to show fraud in the administrator. It was shown for the administrator that the lands sold by him under the order of the Probate Court, brought their full value.

The Chancellor rendered a decree declaring the complainant entitled to relief ; adjudging that the decree of the Probate Court declaring the estate of Carter insolvent be set aside and annulled; that every order, decree or settlement made in or by the Probate Court of Macon county after Randle became administrator, be likewise declared null and void ; that the administration be removed from the Probate Court of Macon county into the Chancery Court of Bullock county ; that Randle be removed from the administration of the estate, and required to make settlement in the Chancery Court; and that he be enjoined from any further action as such administrator; that the Register in Chancery of Bullock county be appointed receiver of the property of every kind and description belonging to the estate of said Carter ; that the decree of the Chancery Court of Macon county, in favor of Mary A. Randle, be declared null and void and fraudulent as to complainant; that the sales of land made by Randle, as administrator, be set aside and vacated, and declared null and void. A reference was ordered to ascertain what was due the estate from said Randle, and the costs

[Randle et al. v. Carter, pro ami.]

were taxed against him. From this decree Randle appeals.

STONE & CLOPTON, for appellants.—I. The complainant claims by virtue of a legacy under the will of Jane T. Carter, and this is her sole right to file this bill. It is a pecuniary legacy. The rule is that the real estate is never to be charged with the payment of legacies, unless it is plain from the will that the testator intended to charge it. If a testator gives a legacy, without specifying who shall pay it, or out of what fund it shall be paid, the legal presumption is that he intended it should be paid out of his personal estate only; and, if that is not sufficient, the legacy fails.—7 Paige, 421; 2 John. Ch. 614; 2 Jarman on Wills, 362; 8 Peck, 478; 9 Peck, 561. There is no expression in the will which shows any intention to make complainant's legacy a charge on the real estate of the testator. It follows that the complainant has no right or interest in the land, and cannot be heard to complain that the sale was void. Whether void or not, it does not affect her rights or interest.

II. The estate was declared insolvent by the Probate Court, and that court had jurisdiction. Proceedings in the Probate Court to declare an estate insolvent, are *in rem*, and the jurisdiction attaches in the report of the administrator, and the decree is not void for irregularities.—45 Ala. 496. These proceedings give the Probate Court exclusive jurisdiction of the estate.—43 Ala. 434. The Chancery Court could not vacate the decree of insolvency except for fraud, and no fraud is shown; it had no power to oust the jurisdiction of the Probate Court and remove the administration into chancery.

III. The decree of the Chancery Court of Macon, in favor of Mary A. Randle, was clearly regular and valid. The complainant had no right involved in it and no cause of complaint at its rendition. She was not a proper party to such a bill. Neither Carter nor his administrator could deny the title of said Mary A. to the property received by Carter. It is immaterial whether he received it under the will of Powell or not. If he received it at all his estate was liable for its restitution, and no harm could follow to complainant by its enforcement.

IV. The proceedings of the Probate Court were certainly valid and binding until assailed for fraud, and fraud is not shown by one particle of proof in this case. The complainant was a party to these proceedings, was represented by a guardian *ad litem*, and they are binding on her till she clearly shows that they were obtained by fraud.

[Randle et al. v. Carter, pro ami.]

GOLDTHWAITE, RICE & SEMPLE, and ARRINGTON & McCALL, *contra*.

No brief for appellee came into the Reporter's hand.

BRICKELL, C. J.—It is not important to determine whether the bequest to the appellee and her deceased brother, is vested or contingent. The period for the payment had not arrived, and whether the legacy is vested or contingent, the only relief she could claim, was payment into court, or security for payment, if the debts of the testator were paid, or in the course of proper administration, ought to have been paid, and the administrator had assets which were liable to satisfy the legacies. Formerly, it seems, a court of equity would not intervene, at the instance of a pecuniary legatee, whose legacy was payable in the future, to compel the executor to give security for its payment, or to pay it into court, unless the legacy was absolute. The modern doctrine is, that the court will intervene though the legacy is contingent, and may require security, or order its payment into court. And, though generally, the court will not withdraw assets from the custody of an executor or administrator, unless he has been guilty of misconduct, or there is just cause to apprehend loss; in the exercise of its jurisdiction for the protection of future rights and interests, it will intervene though there has been no misconduct, no *devastavit* or reason to apprehend it.—1 Story's Eq. § 603. The intervention necessarily depends on the existence of assets, which it is the duty of the executor to hold for the satisfaction of the legacy, when it becomes payable, and which would be liable to its satisfaction, if the period of payment had arrived. The court may, if the necessities of the case require it, as it would when necessary for the recovery of a legacy payable presently, marshal the assets, and draw to itself the entire administration of the estate. So it may, if the facts require it, withdraw the assets from the custody of the executor or administrator, and commit them to a receiver.

It is not necessary to inquire whether, in any case, the Court of Chancery can remove an administrator deriving his authority from the grant of another court of exclusive jurisdiction. If the court has the power, it is only an extreme case, which will justify its exercise. The statutes have committed the power to remove executors or administrators to the Court of Probate granting the letters, and have carefully defined the causes of removal. The Court of Chancery can protect its suitors against the delinquency of executors or administrators, in nearly every possible case, without resort_

ing to the extreme measure of removal, which can be justified only when actual fraud, or some of the distinct grounds of removal in the Court of Probate are shown to exist. Fraud can never be imputed lightly, and though in the course of an administration, there may arise an antagonism of interest between the administrator or executor, and the distributees, or legatees, or creditors, it furnishes no ground of removal. Priority of right in the grant of administration, the law confers on the next of kin, or on the residuary or principal legatee. It will often occur that the interest of distributees will conflict, and that the principal, or residuary legatee, will stand in the attitude of adversary to pecuniary, or specific, or demonstrative legatees, or to specific devisees. Such conflicts cannot deprive the next of kin, or the principal, or residuary legatee, of the priority of right to the administration.—*Bingham v. Crenshaw*, 34 Ala. 683. As they do not in the first instance deprive of priority, when they arise subsequently they cannot of themselves, in the absence of misconduct, justify removal. The bill abounds with allegations of fraud and collusion imputed to the administrator. The evidence, however, does not keep pace with the freedom and liberality of allegation. Indeed, there has been no attempt to support them by evidence ; and they stand positively denied by the answers. It is, therefore, difficult to understand on what ground the Chancellor proceeded to decree the removal of the appellant from the administration, unless it was because he was the husband of the principal legatee, and it was supposed his interest was adverse to that of the appellee. Admitting the conflict, it did not warrant the decree of removal.

A court of equity, in all cases, exercises with caution the jurisdiction to appoint receivers. There must be a legal or equitable right, reasonably clear and free from doubt, attended with danger of loss.—High on Receivers, §§ 55–9. A strong case is required to induce the appointment of a receiver to take assets from the custody of an executor or administrator, displacing his authority. The executor is appointed by the testator, who has the right to declare in whom the management of his estate after his death shall be reposed. The administrator derives his authority from, and is in a qualified sense, the officer of another court of exclusive jurisdiction, compelled to give and keep a bond with sufficient sureties for the prompt and faithful discharge of the trusts of the administration. The court is, therefore, reluctant to interfere with them by the appointment of a receiver. There must be actual misconduct, or fraud, and immediate danger of loss, or the appointment of a receiver can not be

justified. A different rule obtains, and should obtain, than in the case of trustees. The Court of Probate has, by the Constitution, a general jurisdiction over the grant of letters testamentary, and of administration, in which is involved the power of revocation. The grant may be revoked whenever gross misconduct is shown, or whenever a necessity exists, additional security may be required. Protection against loss to creditors, legatees, or next of kin, and security for a faithful administration, are within the power of the parties and the competency of that court. There can but seldom be a necessity for the exercise of any other preventive or protective remedy, than such as that court can afford, and hence, though a court of equity has the jurisdiction to appoint a receiver of the assets, practically taking the administration into its hands, the jurisdiction is not exercised, unless there is manifest danger of loss which may be irreparable.—*Ex parte Walker*, 25 Ala. 81. In the present case, without any evidence of misconduct on the part of the administrator, and without allegation or proof of his insolvency, or of the insufficiency of his official bond, the Chancellor appointed a receiver of the assets, from whom no bond or security was required. Creditors, legatees and devisees are deprived of the security afforded by the bond of the administrator, and the assets committed to the custody of the register of the court, as receiver, without security. We add, only the decree is in this respect erroneous.

The decree of the insolvency of the estate the Court of Probate had jurisdiction to render. Whether it was regular and unassailable on error by any party to it, we have not, and could not, examine in this controversy, though not even irregularity has been imputed to it by the appellee. The bill charges it was obtained by the fraud of the administrator, and the collusion of the creditors. The charge is denied, and no evidence was given to sustain it, yet the Chancellor pronounced against it a sentence of nullity. It is possible the conclusion was reached, on the supposition that it was essential to the validity of the decree, that the appellee and other legatees, or the devisee, were necessary parties to the proceedings. A decree of insolvency in the Court of Probate merely ascertains as between the personal representative and the creditors, the *status* of the estate, and its operation is, to transfer to the Court of Probate exclusive jurisdiction of all claims against the estate—claims of creditors, of course, not the claims of legatees or next of kin, for the whole proceeding is founded on the fact that the assets are insufficient for the payment of debts to which they are primarily liable. There are no other parties, or were not under

[Randle et al. v. Carter, pro ami.]

the statutes existing when this decree was rendered, than the personal representative and the creditors. As to the next of kin, or legatees, the record is *res inter alios actœ*, not affecting their rights, and not evidence against them of any fact ascertained by it.—*McGuire v. Shelby*, 20 Ala. 456; *State Bank v. Ellis*, 30 Ala. 478; *Lambeth v. Garber*, 6 Ala. 870; *Edwards v. Gibbs*, 11 Ala. 292. The regularity of the decree of insolvency is not affected, ·because the appellee was not a party. There was no process by which she could be made a party, and it would at least have been irregular if any had been resorted to for that purpose.

Nor is the appellee entitled to impeach the decree if it was tainted with fraud, for the simple reason that it is not in its operation, of the slighest injury to her. Strangers may collaterally impeach judgments or decrees for fraud or collusion between the parties to them, but they must have a right the judgment injuriously affects, if it has full effect. When allowing the judgment full operation, their rights are unaffected; they can no more be heard collaterally to assail it for fraud, than they could be permitted directly to question it for error or irregularity.—Freeman on Judgments, §§ 334–337. The decree of insolvency not being evidence against the appellee, operating only as between the creditors and the personal representative, the Chancellor was in error in pronouncing it void at her instance.

Subsequent proceedings ascertaining the validity and amount of the claims of creditors stand upon a different ground. The ascertainment of the validity and amount of the demand of a creditor in the course of proceedings in insolvency in the Court of Probate has all the attributes of a judgment *in personam* against the personal representative, obtained in the regular course of a suit at common law by the creditor. In *Heydenfeldt v. Towns*, 27 Ala. 429, it is said, that the decree in favor of the creditor in the course of the insolvency proceeding, has, as matter of evidence, a larger operation than a judgment at common law against the personal representative; that it is as against the heir or devisee, *prima facie* evidence of the debt or demand. However that may be, it is as against legatees who claim privity with the personal representative, as are all judgments rendered by a court of competent jurisdiction, *prima facie* evidence of the debt or demand. The legatee may assail all such judgments for fraud, and, if successful, deprive them of all force. Or, if the personal representative claims reimbursement from the assets for their satisfaction, may show that valid defenses existed, which, if he had been diligent in ascertaining and had preferred, they could not have been obtained. The appellee

has assailed the claims of the creditors for fraud, and has also averred that as to some of them valid defenses existed which ought to have been made. But of these averments, denied by the answers, no evidence whatever was offered. The judgments of the Court of Probate, ascertaining the demands of the creditors, remain *prima facie* evidence against the appellee, and the Chancellor was in error in pronouncing them void.

The decree of the Court of Chancery of Macon county in favor of Mrs. Randle, against the administrator, was also, by the Chancellor, declared void as to the appellee. The decree of the Chancellor is not accompanied by any statement of the reasons which led to his conclusions, and we have not been furnished with any argument in support of many of them. We can hardly suppose this decree was pronounced void, because the appellee was not a party to the suit in which it was rendered. That is one of the grounds on which the bill impeaches it, but it seems scarcely necessary to say the appellee could not properly have been made a party to the suit, which had for its purposes simply an account of the testator's trusteeship of personal property of the complainant, and a decree against the administrator, for the balance found due on such accounting. The only proper parties were the *cestui que trust*, and the administrator. Nor was it at all material whether the will of the grandfather had been admitted to probate before the testator received the trust property, or whether it was subsequently irregularly admitted to probate. The undisputed fact remains, that during the minority of the *cestui que trust*, the testator, claiming and acting as trustee under the will, received funds and property which were never reclaimed from him, and for which he was under the same moral and legal obligation to account, that he would have been if there had been, before his acceptance of the trust or subsequently, a formal probate of the will creating the trust. If any inference unfavorable to the decree could be drawn from the fact that the court of probate allowed far less than the whole amount, the answers afford a full explanation, removing such inference. Neither the testator, if the suit had been prosecuted against him, nor the administrator could deny the title of the *cestui que trust* to the property and funds which he received as trustee. The principle is general, if not universal, that after an acceptance of a trust, and obtaining possession of property or funds in the capacity of trustee, which has not been reclaimed from him by a title paramount, a trustee will not be heard to deny the validity of the trust, or the title of the *cestui que trust*. It is but another expression of the settled principle that trustees

shall not take advantage of their relation to obtain, at the expense of the *cestui que trust*, a personal benefit.—*Godwin v. Yonge*, 22 Ala. 553; *Foscue v. Lyon*, 55 Ala. 440. Whether Mrs. Randle was under the will of her grandfather entitled to the funds received by the testator as trustee, could be important only, if they had been claimed adversely to her. No such claim having been made, the testator was bound to account to her for them. We find in the record no reason for impeaching the decree in her favor, as a just claim against the testator, to the extent it was allowed by the court of probate.

The estate of a testator, real and personal, is primarily chargeable with the payment of debts. Until these are satisfied, legatees of no class or character, can lay any claim to the assets, or compel the personal representative to appropriate, or give security for their appropriation, to their satisfaction. It is of the essence of the title of the appellee, that the assets in the hands of the administrator, or with which he is legally chargeable, should be sufficient for the payment of the debts, and an excess remaining on which the legacy claimed, is a primary charge. If it appears the assets are insufficient for the payment of debts, her title to relief necessarily fails. The court can not compel the administrator to give security for, or to pay into court, funds for the satisfaction of the legacy, when it becomes due and payable, which the law compels him to apply to the satisfaction of debts. The debts have been established by the judgment of a court of competent jurisdiction, in the course of proceedings authorized by law, and the only proceedings to which the creditors could resort. In the absence of fraud or collusion, this judicial ascertainment of the existence and validity of the debts against the administrator, is evidence against the appellee. The administrator was clothed with the legal title to the personal assets; the appellee, a pecuniary legatee, had an equity, and the relation between her and the administrator was that of trustee and *cestui que trust*. If any valid defense to the debts was shown, and it was shown the executor was wanting in diligence in preferring it, he could not protect himself against liability. But there is want of any substantial objection to the debts, and the assets of the testator, real and personal, stand charged with their payment. If these assets are exhausted in payment of the debts, the appellee must yield obedience to the inflexible maxim of the law, commanding that justice be done, before generosity can be consulted.

The decree of the court of probate for the sale of the land of the testator, may be void, and the legacy may be charge-

able on the lands. But if the decree is void, it is only as to the devisee, in whom the title resided. If she does not complain of it, the appellee can not, unless it was shown its invalidity was of injury to her. Injury to the appellee could not result, unless it was shown the sale of the lands under the decree was for a sum disproportionate to their value, or that there had been a misapplication of the proceeds of sale. The lands were sold for their full value, and the devisee, the only party adverse to the personal representative in the application for an order of sale, acquiesces. The proceeds of sale have been partially applied to the payment of debts judicially ascertained, creating in any event an equity in favor of the purchasers to compel a confirmation of the sale, or to charge the lands with so much as they have paid. There is no averment that the full value of the lands was not realized by the sale, and no averment that more could be realized by a re-sale. Why should the sale be disturbed at the instance of the appellee? If there are assets in other States, chargeable with the legacy to the appellee, the grant of administration to the appellant has no extra-territorial operation, does not extend to them, and except so far as he may have received, he is not chargeable with them. So far as he has received, he has accounted to the creditors, who had the paramount right. It is, without doubt, apparent and conclusive that the estate of the testator was insufficient for the payment of debts. There was, consequently, no relief the court could grant to the appellee. The original bill should have been dismissed. A decree must be rendered, reversing in all things the decree of the Chancellor, dismissing the bill of the appellee, and taxing her next friend with the costs in the Court of Chancery, and with the costs of this appeal.

STONE, J., not sitting.