## Isaac Bradley v. Butler Bradley.

(Decided March 3, 1922.)

### Appeal from Floyd Circuit Court.

1. Receivers—Appointment—Discretion.—Under the provisions of section 298 of the Civil Code the appointment of a receiver rests largely in the discretion of the chancellor, although it is not an unlimited discretion.

2. Receivers—Appointment—Discretion—Distribution of Proceeds of Oil Royalty.—In a controversy between the holder of a life estate and the remainderman over the distribution of the proceeds of an oil royalty in the lands so held by them, it appearing that the pipe line company taking the oil had declined to market the same until the controversy was settled, but was charging storage fees on the oil from the lease as it accumulated, the chancellor properly exercised his discretion in appointing a receiver to take charge of the oil and market the same and thereby dispense with the storage fees.

C. B. WHEELER for appellant.

A. J. MAY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In August, 1882, Greenville Slone and Elizabeth Slone, his wife, conveyed by deed of gift to their daughter, Jane Bradley, and Isaac Bradley, her husband, jointly, two tracts of land on the right fork of Beaver creek in Floyd county "in consideration of the sum of it being a gift (by) made by the party of the first part to the second part and to be held by them during natural life, and then it is to become the real estate of their son, but has to belong to him and his heirs forever."

At the time of the conveyance Jane and Isaac Bradley had only one son, the appellee, Butler Bradley, then a child of about ten years of age, and in July, 1902, Isaac and Jane Bradley, the holders of the life estate, and their son, Butler Bradley, then about thirty years of age, joined in an oil and gas lease on the lands in question, reserving a royalty unto themselves.

Wells were shortly thereafter drilled on the property, some or all of which were and are producing oil wells.

Until the winter of 1919-20, although there was no special agreement between the three parties as to the distribution among themselves of the royalty coming from

the property, so far as this record shows, by common acquiescence they had divided the proceeds of the royalty equally between the three, that is, one-third to each; but about that time or shortly prior thereto there had arisen certain differences between the father on one side and the mother and son on the other, which resulted in the son, the remainderman, claiming the whole of the royalties, and the father, one of the holders of the life estate, at the same time claiming the whole or one-half thereof.

These differences continued for some months, and rather than being adjusted or settled by the parties they seem to have become accentuated, and the breach between them widened. The father had left the home, and as we gather from the evidence has separated from his wife.

The checks from the pipe line company into which the oil was turned had always, until these differences arose, been made payable jointly to Isaac and Jane Bradley, but in February, 1920, when a royalty check came through the mail, Jane Bradley received the letter and turned over the check, endorsed by her, to the son, Butler Bradley; but when the son presented the check to Isaac Bradley, he declined to endorse the same.

The pipe line company becoming aware of the differences between the parties, and doubtless being familiar with the state of the title to the land, notified the parties that the oil from this lease would be held by it in its storage tanks until the controversy was settled or adjusted, but that there would be charges for the storage thereof as the oil accumulated.

In May, 1920, the appellee, Butler Bradley, brought this equitable action against his father and mother wherein he, as remainderman, asserted title to the whole of the royalties. Among other things he alleges that there had accumulated from the wells on the property several hundred barrels of oil which had been pumped into the storage tanks of the pipe line company or the storage tanks of the company operating the lease, and that those companies refused to put the oil on the market because of the controversy and that the storage charges on the same were accumulating and would continue to accumulate as oil was produced from the lease, and among other things prayed in his petition for the appointment of a receiver to take charge of the oil that had already been produced and which might thereafter be produced pending the litigation, with directions to sell the

same and collect the royalties and hold them until the further order of the court.

On motion of the plaintiff the trial court, after a hearing, appointed a receiver and from that action alone this appeal is prosecuted, there having been up to that time no judgment or action of the court determining the rights of the parties to the royalty or its proceeds.

On the hearing of the motion it was made to appear that the oil from the lease was accumulating in storage tanks and was not being marketed and that the storage charges were likewise accumulating, and the court, evidently upon the ground that it was to the interest of all the parties to the litigation to avoid the payment of these unnecessary storage fees, appointed a receiver and directed him to sell the accumulated oil and other oil that might be produced from the lease and collect the proceeds thereof and hold them until the further order of the court.

In Isaac Bradley's answer he denies that Butler Bradley is his son, and the argument is made that as he is not shown to be the son of Isaac and Jane Bradley he is not the holder of the remainder interest and cannot, therefore, maintain this suit for any purpose. But the evidence shows that Jane Bradley was the mother of Butler Bradley and that Jane Bradley was the daughter of Greenville and Elizabeth Slone, the grantors in the deed of 1882; and while the evidence shows that Butler Bradley was born during the existence of a former marriage of Jane Bradley to a man by the name of Whitaker, at the date of his birth an action for divorce was pending between Whitaker and his wife, and after the granting of the divorce Isaac Bradley married Jane and he and she raised the son, Butler, and gave him the name of Bradley, and Isaac Bradley reared and educated and treated him as his son and admits in his evidence on the motion that while he does not know him to be his son "he had a chance at him."

Clearly, even though Isaac Bradley had not by his subsequent marriage to Jane and his subsequent recognition of Butler as his son have thereby made Butler legitimate, still, Butler being the son of Jane and the grandson of Granville Slone and his wife, the grantors in the deed of 1882, and being the only son which Jane and Isaac had at that time he must necessarily be deemed the remainderman referred to therein.

Argument is further made in the brief for appellant that even if Butler Bradley is the remainderman still

the holders of the life estate are entitled to the whole royalty. But there has been no action of the trial court looking to a settlement of the rights of the parties in this royalty and it would be out of place for this court in advance of such action to undertake to settle their rights in the royalty.

The only question which we have is as to the propriety of the court's action in appointing a receiver.

The language of the Code (section 298) is that the court *may* appoint a receiver to take charge of property or a fund during the pendency of the action, and because of this language it has been consistently held by this court that the appointment of a receiver rests largely in the discretion of the chancellor, although it is not an unlimited discretion. L. & N. R. Co. v. Egan, 100 Ky. 745; McClure v. McGee, 128 Ky. 464.

The section quoted authorizes the court upon the motion of any party who has, or probably has, the right to, a lien upon, or an interest in any property or fund, to appoint a receiver therefor, upon a showing that the property or fund is in danger of being lost, removed or materially injured; and certainly the chancellor in this case did not abuse his discretion in appointing a receiver upon the showing that the storage charges on the oil which was accumulating were likewise accumulating and would thereby necessarily decrease the fund which was eventually coming to some one or all of these parties.

The chancellor, doubtless, had the view, in which we concur, that it was to the interest of all the parties that this oil should be promptly marketed as it was produced and the accumulation of the storage fees thereby dispensed with.

Judgment affirmed.