# Producers' Coal Company of Kentucky v. Barnaby, et al.

(Decided June 19, 1925.   Rehearing Denied, with Modification
October 13, 1925.)

## Appeal from Union Circuit Court.

1. Mines and Minerals—Coal-Mining Company had Suspended Operations of its Mines Within Statute, Entitling Employes to Superior Lien for Wages.—Coal-mining company had suspended operations of its mines within Ky. Stats., section 2490, where its employes had quit when their past-due wages were not paid, and hence employes were entitled to a superior lien on company's property to secure their wages earned within six months next before commencement of action, as provided by section 2488, since it was instituted by them within less than 60 days from date of suspension of business by coal company, as provided by section 2491, authorizing joining of several employes in a single action for enforcement of such a lien.

2.  Receivers—Generally Receiver Not Appointed, Unless Necessary to Prevent Fraud or to Save Property from Fraud or Threatened Loss or Destruction.—Generally a receiver will not be appointed unless it appears that appointment is necessary to prevent fraud, or to save property from fraud or threatened loss or destruction.

3.  Receivers—Receiver May Not be Appointed Because it Will do no Harm.—That appointment of receiver will do no harm will not of itself authorize court to appoint one.

4.  Receivers—Court Exercised its Discretion in Appointing Receiver for Coal-Mining Company.—Court held to have exercised its discretion in appointing receiver for coal-mining company, under Civil Code of Practice, section 298, where it had ceased to operate its mines, its property was covered with mortgage liens, and it was unable to meet its pay roll on regular pay days or past-due current bills, and its employes, to whom it was indebted for work, had instituted an action for enforcement of their lien claims.

5.  Mines and Minerals—Property of Coal-Mining Company "Had Come to be Distributed Among Creditors" Within Statute, Thereby Entitling Employes to Lien for Wages.—Where coal-mining company had ceased to operate its mines, and its property was covered with mortgage liens, and it was unable to meet its pay rolls on regular pay days or past-due current bills, and its employes, to whom it was indebted for work, had instituted an action for enforcement of their claim, its property and effects "had come to be distributed among creditors," within Ky. Stats., section 2487, thereby entitling employes to a lien for wages on so much of property as may have been employed in the business.

6.  Mines and Minerals—Coal-Mining Company had "Suspended Business" Within Statute, Entitling Employes to Lien for Wages.— Coal-mining company had suspended business, within Ky. Stats., section 2490, thereby entitling its employes to a lien for wages, where it had ceased to pay its employes and covered its properties with mortgage liens, and its current bills were unpaid.

7.  Judgment—Intervening Petition Should Have Been Dismissed.— Intervening petition, completely traversed and not sustained in any part by evidence, should have been dismissed, and it was error to enter judgment for petitioners in absence of proof.

8.  Receivers—Resale of Property in Hands of Receiver Not Erroneous, Though Depriving Owner of Redemption Right, which it had Under First Sale.—Resale of property in hands of receiver held not erroneous, though it deprived owner of redemption right, which it had under first sale, where property had not brought two-thirds of its appraised value, and sum realized was wholly insufficient to satisfy creditors, and judgment of sale expressly reserved right of court to reject any and all bids.

VANCE & HEILBRONNER and HELMER, MOULTON, WHIT-MAN & WHITMAN for appellant.

HENSON & TAYLOR and ALLEN, HARRIS & ALLEN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

Appellee, William Barnaby, and a hundred or more other employes of appellant, Producers' Coal Company of Kentucky, incorporated, commenced this action in the Union circuit court against appellant, coal company, under sections 2487, 2488, 2490 and 2491, Kentucky Statutes, upon their several claims for past due wages owing by the company to them, and each of them, and to have their several claims adjudged a prior and superior lien .upon all the property, both real and personal, of the company located at Waverly, Union county, and for the appointment of a receiver to take charge of and preserve the property, pending the litigation, on the grounds, as alleged in the petition, that the appellant company had ceased to operate its coal mine on the property described, and the mine, an underdrainage one, was through the neglect of the company and its officials, agents and servants, being permitted to fill with water, whereby it was being greatly injured and damaged and the personal property was deteriorating and becoming valueless. It was averred in the petition that the coal company at the time of the commencement of this action was indebted to R. C. Arnold and wife in the sum of $55,000.00, secured by mortgage on the coal property at Waverly, and was indebted to the Union Bank of Chicago in the sum of $300,000.00, secured by mortgage, and against which bonds had been or would be issued; and was further indebted to Charles Schlytern, trustee, in the sum of $40,000.00, also secured by mortgage upon the same property. It was further averred in the petition that the company was indebted on unsecured claims for labor, supplies, etc., in the sum of about $24,000.00; the amount of the claims forming the basis of this action totalling about $9,000.00.

Appellees averred that the wages for which they sued had been earned while in the employment of the appellant company, mining, loading and shipping coal for it within six months before the commencement of the action and that the company had suspended business and ceased to operate its mine within sixty days next before the filing of the suit, thus bringing themselves clearly within the provisions of the statutes to which we have referred. Operations ceased at the mines about June 1st, and all of the appellees, employes, were out of employ-

ment, and the company had failed to meet its last two pay days. This suit was commenced on June 11, 1924.

Motion with notice for receiver for the property of the company was made immediately following the filing of the suit, and on June 24th the chancellor, upon hearing, sustained the motion and placed the property in charge of R. C. Arnold as temporary custodian, and named E. R. Morton, master commissioner of the Union circuit court, as receiver for the property, and Morton immediately thereafter qualified and entered upon the discharge of his duties. Among other things, he was directed to advertise for claims against the property and report to the court. Thereupon Schlytern filed answer and cross-petition against the company, seeking the enforcement of his mortgage lien on the property of the company to the amount of $40,000.00; and the Union Bank of Chicago, trustee of the $300,000.00 mortgage bond issue, filed its answer and cross-petition seeking to enforce its lien. About the same time Mrs. Fannie C. Arnold filed her answer and cross-petition to enforce her purchase money lien of $55,000.00 against the mining property. The Producers' Coal Company filed its reply to the answers and cross-petitions, averring that its charter limit of indebtedness was $100,000.00, and that by reason of the mortgage bond issue being in excess of the charter limit of indebtedness, it is void and unenforceable, and, further, that the mortgage and bonds were illegally placed upon the property by A. E. Anderson, a promoter and principal owner of the coal company, and same had been fully paid for by him out of the funds belonging to the coal company, and it prayed judgment declaring all such indebtedness void and unenforceable. After the issues were made up a large amount of evidence was taken in depositions in support of the several claims of the parties. The cause being submitted on its merits the court found for the original plaintiffs, employes of the coal company, on their several claims for wages amounting to a total of more than $9,000.00 and gave them a prior lien, and adjudged Mrs. Arnold to recover $22,148.00 for purchase money with lien, and also that certain other persons and companies that had furnished material and supplies to the company should have liens for their money on the property of the company.

Appellant company's first and chief insistence is, that the chancellor erred in sustaining appellees' motion for receiver for the property of the company, and in ap-

pointing a receiver for the property of the appellant, coal company, because, it says, it was not insolvent and its property was not in danger of being lost or removed. The pertinent provisions of section 2487, Kentucky Statutes, relating to liens of employes on the property and effects of coal companies reads:

"When the property or effects of any mine, etc., . . . company, . . . whether incorporated or not, shall be assigned for the benefit of creditors, shall come into the hands of any executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors, or shall in any wise come to be distributed among creditors, whether by operation of law or by the act of such company, . . . the employes of such owner or operator in such business shall have a lien upon so much of such property and effects as may have been involved in such business," including both realty and personalty.

Section 2490 provides:

"When any such company, owner or operator shall suspend, sell or transfer such business, or when the property or effects engaged in such business shall be taken in attachment or execution, so that the business shall be stopped or suspended, the said lien shall attach as fully as is provided in section 1 of this article, and in such case may be enforced by proceedings in equity."

Wages of employes falling due within six months before the property or effects of the company "shall in any wise come to be distributed among creditors" are made a superior lien upon the property of the coal company by section 2488, Kentucky Statutes.

This action by the employes for receiver and for lien to secure past due wages is based upon the suspension of business of the coal company, as provided by section 2490, Kentucky Statutes, providing that when such company "shall suspend . . . such business, the lien shall attach as fully as is provided by section 2487, and in such case may be enforced by proceedings in equity." There is no denial by the company that its mines were shut down and operation suspended, but it says that the suspension of work was not voluntary on its part but the result of the wrongful conduct of appellees, its employes,

in calling a strike and ceasing to work in the mines. Appellees admit that they ceased to work for appellant company on the last day of May, but say they quit because the company had not paid their wages for the last two pay days, and that they were unwilling and unable to continue to work for the company without pay, and when the company appeared to be unable to provide for the payment of their wages. It is admitted by appellant company that it had failed to meet its last two pay days and that it was indebted to appellees for wages for some weeks back. While it was not perhaps good business on the part of appellees, as employes of the coal company, to cease work in the mines at the time they did, nevertheless they had a right to quit an employer who had failed to pay their wages at the regularly stipulated periods, and the employer had no legal right to complain of such cessure on the part of its working men under such conditions. As it is admitted the mines ceased to run, it must be held under the facts and circumstances of this case that the company suspended operations of the mines, for we have seen that the employes had a right to withdraw from further services to the company when their past due wages were not paid; thus, the mines were suspended within the meaning of section 2490, Kentucky Statutes, and the employes were, therefore, entitled to a prior and superior lien upon the property, both real and personal, of the company to secure their wages earned within the six months next before the commencement of the action, as provided by section 2488, Kentucky Statutes, since it was instituted by the creditors within less than sixty days from the date of suspension of business by the coal company as provided by section 2491, Kentucky Statutes, authorizing the joining of the several employes in a single action for the enforcement of such a lien.

Receivers are appointed by our courts under section 298, Civil Code, which provides:

"On the motion of any party to an action who shows that he has, or probably has, a right to a lien upon, or an interest in, any property or fund, the right to which is involved in the action, and that the property or fund is in danger of being lost, removed or materially injured, the court, or the judge thereof during vacation, may appoint a receiver to take charge of the property or fund during the pendency

of the action, and may order and coerce the delivery of it to him. The order of a court, or of a judge thereof, appointing or refusing to appoint a receiver, shall be deemed a final order for the purpose of an appeal to the Court of Appeals.''

Pursuant to the provisions of the foregoing section appellees averred that they had a lien upon and an interest in the property of the appellant company, which property was, on account of the flooding of the mines, endangered, and was likely to be partly, if not entirely, lost or destroyed, and all of it materially injured. The averments of the petition upon this point being:

''Said defendant is not operating said mine as aforesaid, but that it is being permitted to be filled with water, thereby greatly injuring and damaging said mine as aforesaid, if not to some extent destroying the value of same and the security which plaintiffs and other lienholders have on and against said property. They say that they and each of them have a first and superior lien on said property aforesaid and that same is in danger of being materially injured unless a receiver is appointed to take charge of said property and preserve it and if possible to pump out and keep pumped out the water which is constantly running into it and which if not kept promptly attended to and cared for said mine will be flooded and very greatly damaged; that conditions imposed upon it have not been performed in many respects, among which are that said defendant has in March, 1921, permitted said property to be sold for taxes and to be bid in by E. A. Gardner, who claims a lien thereon for the sum of $937.98, and has failed to meet its obligations to its creditors and to these plaintiffs aforesaid.''

We have held in many cases that the appointment of a receiver is largely in the discretion of the chancellor. L. & N. Ry. Co. v. Eakin, 100 Ky. 745; Douglass v. Cline, 12 Bush 608; Fleming, Trustee v. Virginia Mining Company, 196 Ky. 38. In the case of Elkhorn Coal Company v. Fairchild, 191 Ky. 276, we said:

''The appointment of a receiver is a matter always within the sound discretion of the court, to be exercised, however, in accordance with established legal principles.''

It is the general rule that a receiver will not be appointed unless it appear that the appointment is necessary either to prevent fraud or to save the property from deterioration or threatened loss or destruction. 23 R. C. L. 18. The fact that the appointment will do no harm will not of itself authorize such action by the court. Greasy Creek Land Company v. Greasy Creek Coal Company, 196 Ky. 67.   In Bradley v. Bradley, 194 Ky. 60, we held that, under the provisions of section 298 of the Civil Code, the appointment of a receiver rests largely in the discretion of the chancellor, although it is not an unlimited discretion. "To authorize the appointment of a receiver," says 23 R. C. L. 15, "the petitioner must show either a clear legal right in himself to the property in controversy, or that he has some lien upon or property right in it, or that it constitutes a special fund out of which he is entitled to satisfaction of his demand."

The same text, page 10 of vol. 23, reads:

"The appointment of a receiver is, as a general rule, discretionary, and not a matter of right."

In 3 Pomeroy's Equity Jurisprudence, section 1431, it is said:

"The appointment of a receiver is, as a general rule, discretionary.   The discretion is not arbitrary or absolute; it is a sound and judicial discretion, taking into account all the circumstances of the case, exercised for the purpose of promoting the ends of justice and of protecting the rights of all the parties interested in the controversy and subject matter and based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the judicial proceeding."

In the case of Ft. Payne Co. v. Coal Company, reported in 38 American State Reports 109, the court, in considering the appointment of receivers, observed:

"The power to appoint receivers is, in all cases, exercised with great caution.   There must be a legal or equitable right, reasonably clear and free from doubt, attended with danger of loss.   The preservation of the subject of the controversy for the benefit of the party who will, ultimately, be decreed to have

the right, is the object of committing it to the custody of a receiver. Hughes v. Hatchett, 55 Ala. 631; Randle v. Carter, 62 Ala. 95.''

In the interest of the parties to the litigation the trial court, in the instant case, exercised a discretion as were its rights in the appointment of a receiver for the property of the coal company, and its action has been fully justified by subsequent events no less than by the facts manifested to the court at the time the receiver was appointed.

Appellant company argues that its employes had no right of action under section 2487, Kentucky Statutes, unless and until its property and effects were assigned by it for the benefit of creditors, or came into the hands of an executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors, or otherwise came to be distributed among creditors. In part this contention is correct but in the main it is not sustainable. The section of the statutes under which this proceeding was commenced provided that when the property or effects of a mining company shall in any-wise come to be distributed among creditors, whether by operation of law or by an act of such company, the employes shall have a lien upon so much of the property and effects as may have been employed in the business. The same section enumerates certain specific conditions under which the lien shall attach, and then says that when the property of the company is assigned for the benefit of creditors or shall come into the hands of any executor, administrator, commissioner, receiver of a court, trustee or assignee for the benefit of creditors, and adds, in order to take care of every other conceivable case, these words: ''Or shall in any way come to be distributed among creditors, whether by operation of law of by the act of such company, owner or operator of such business.''

When a coal company ceases to operate its mines, its property is covered with mortgage liens and it is unable to meet its pay rolls on regular pay days, and it has many past due current bills which it is unable to meet, and its employes to whom it is indebted for work institute an action for the enforcement of their lien claims, we do not think it is unreasonable to hold that the property and effects of the company ''have come to be distributed among creditors'' within the meaning of section 2487, Kentucky Statutes, for that is in truth and in fact

the actual situation. In the case of Gugenheim v. Watkins, 167 Ky. 643, when considering this question and construing the same provisions of the statute, we said:

"We are of opinion that the facts disclosed by this judgment are sufficient to bring this case within the condition upon which appellees under sections 2487 and 2488 would have a lien superior to appellant's lien; that the company's property had 'in any wise come to be distributed among creditors, etc.' Since a court of equity will regard the substance rather than the mere form, we are sure the chancellor was justified in the conclusion that this company's affairs had come to be distributed among its creditors, and that the legislature had it in mind to cover just such a case as this when, after enumerating all formal methods of liquidation, it added the clause 'or in any wise, &c.,' to section 2487."

It is next insisted by appellant company that a mere temporary suspension of business is not sufficient to justify the establishment of a lien for wages under section 2490, Kentucky Statutes, but we are of opinion that it is mistaken in this contention. Surely the facts of this case show the company ceased to pay its employes and covered its property with mortgage liens; its current bills were unpaid, it was time for the employes to take action. In fact, the statutes provide that employes in order to have the advantage of a prior lien upon the property of the employer, or an employer, must act promptly. Such action must be commenced within sixty days of the suspension of business. In enacting this section it was not contemplated that the employes would wait for fifty-nine (59) days before bringing the suit. When the company suspended business for as much as ten days without paying employes and other current bills, the provisions of the statute to which we have referred, providing that when the company shall suspend business, a lien shall attach in favor of the employes, became operative. The word "suspension" does not convey the same idea that the words "assign," "acquit" or "abandon" convey when employed in connection with the operation or working of a coal mine, but indicates a much briefer period. A coal mine might suspend business with intention of resuming within a short time, and yet under the statutes the right of unpaid employes to a lien attaches.

It is contended by appellant that some of the plaintiffs below, appellees here, were not in fact employes of the company working for wages, but were purchasers of labor claims against the company, and it is insisted by appellant that a purchaser of labor claims is not and can not acquire a lien on mining property under sections 2487 and 2490, Kentucky Statutes. This question is not presented by the pleading. It is not, therefore, necessary for us to determine whether an assignee of a labor claim in a case like this is entitled to the lien which the laborer himself could have enforced had he filed his claim and proceeded as provided by section 2487, et seq., Kentucky Statutes.

In considering the question of the right of an assignee of labor claims to maintain an action, in the case of Frailey v. Winchester Railroad Company, 96 Ky. 570, we said:

"Not having performed labor, or furnished labor, materials or teams, for the construction of the railroad under a contract, express or implied, with the owner, or by a subcontract thereunder, they are not entitled to a lien upon the property and franchise of the appellee. By the express terms of the statute none except those so situated can assert a lien under the act, *supra*."

Appellant relies upon this opinion as conclusive authority for its contention that the assignee of a labor claim cannot enforce a lien against the property of the employer company, but we think that case may be distinguished on the facts from this case. At any rate in this case the laborer, although he had assigned his claim, joined as plaintiff for the use and benefit of his assignee, thus completely removing from the case the question which appellant makes.

The claim of Franklin, DeHaven & Waggener, presented by way of intervening petition, against the coal company for $330.96 for mine ties billed to Midland Coal Company, as shown by exhibit attached to the petition, was denied by answer of the company, each material averment of the intervening petition being traversed, including the agency of the Midland Coal Company. No proof was taken to sustain the averments of the intervening petition. This branch of the case was submitted on the pleadings. The lower court adjudged the petitioners entitled to recover against the company. This was error

in the absence of proof. The intervening petition, being completely traversed and not sustained in any part by evidence, should have been dismissed. To this extent the judgment is reversed with directions to dismiss the intervening petition of Franklin, DeHaven & Waggener.

Omitting consideration of some of appellant's less important contentions, we come to its last, which is stated in its brief:

"Where a trial court, in its decree for sale of property, reserves the right to reject any and all bids, it does not authorize the court to arbitrarily reject a bid and order a resale of the property, but there must exist a good reason therefor.

"The fact that lienholders or creditors failed and refused to bid at commissioner's sale, because they thought the property appraised too high and desired a revaluation of said property, is not a reason sufficient to justify a court in exercising the right reserved by it, and reject all bids at said commissioner's sale and order a resale of said property, thereby depriving the owner of said mine of the right of redemption."

The property of the company was appraised at $50,000.00. It was bid in by one Mason at $8,000.00. Exceptions were filed to the report of sale by a number of interested parties, including Mrs. Arnold, the holder of several purchase money notes, amounting to more than $22,000.00, complaining of the inadequacy of the sale price and asking a resale.

The judgment of sale expressly reserved the right to the court to reject any and all bids. The successful bidder admitted the property did not bring a fair price and consented that the sale be set aside and offered to bid $16,000.00 in case a resale was ordered. On this showing the court set aside the first sale and ordered another. Of this ruling appellant complains, although it was assured that the property would bring at least twice as much on the second sale as it brought on the first. At the second sale the property brought more than $32,000.00, which was more than two-thirds of its appraised value.

Appellant's complaint of the order granting a resale of the property is based upon the theory that by a resale it was deprived of the redemption right it had under the first sale, which brought less than two-thirds of the appraised value of the property. This is not a

sufficient reason why an order of resale should not have been entered. It was the duty of the court in selling the property of appellant to make such orders as would cause the property to bring the highest price and realize the greatest sum for the payment of creditors and for the use and benefit of appellant. This contention, therefore, is unsound.

"When the price paid is greatly disproportionate to the actual value of the property, only slight additional circumstances are required to make it the duty of the chancellor to set aside the sale." Durham v. Elliott, 180 Ky. 724.

The property had not brought two-thirds of its appraised value, and the sum realized was wholly insufficient to satisfy its creditors. We are of opinion that on the facts shown the trial court was justified in ordering a resale of the property.

Appellee insists that item 11 of the judgment of June 7, 1922, charging Anderson with $17,500.00, as of April 1, 1921, for bonds to the amount of $17,500.00, and interest coupons to the amount of $10,000.00, appropriated by him should be reversed, but we are not satisfied to do so and rather rest upon the finding of fact made by the chancellor with respect to this claim. The judgment with respect to this item must, therefore, be affirmed.

Judgment affirmed both upon the original and cross appeals, except as indicated herein.