# Fort Payne Furnace Co. v. Fort Payne Coal and Iron Co.

*Bill in Equity by Creditors of Corporation for apppointment of Receiver.*

1. *Fraud; allegations of.*—A mere general averment of fraud, as that a conveyance or a sale or other disposition, made or threatened, was or is with fraudulent intent, is not sufficient in pleading. The substantial facts from which the conclusion of fraud is deduced must be set out, so that issue can be formed on the averments.

2. *Creditors bill; appointment of receiver.*—A bill filed by creditors of a corporation alleged that it had issued part of an authorized issue of bonds secured by a deed of trust of all its property; that the stockholders and directors had voted that the property be sold at public auction; and appended to the bill as an exhibit was a circular issued by the directors appealing to the stockholders to come to the relief of the corporation by purchasing its bonds, and expressing the belief that at forced sale the property would not yield more than enough to pay the bonds already disposed of. The bill averred that the proposed sale was a fraudulent scheme to enable the bondholders to secure the entire property, to the exclusion of all other creditors or stockholders, and that the directors were fraudulently conniving with the bondholders to sell all the property for the amount of the bonded indebtedness, and had advertised to take the outstanding bonds in payment for the property at said proposed sale; but the facts relied on to show fraud were not set out; it was not alleged that the directors, or any of them, had any interest in the proposed sale; nor that any of the outstanding bonds were not sold for their full value, and to *bona fide* purchasers; nor were the terms of the trust deed set forth, or a copy thereof attached; nor was it shown when the bonds became due, nor that the proposed sale was not in compliance with the requirements of the deed of trust. *Held*, that no case was shown for the appointment of a receiver of the property covered by the deed of trust.

APPEAL from the Chancery Court of DeKalb.
Heard before the Hon. S. K. McSPADDEN.

[Fort Payne Furnace Co. v. Fort Payne Coal & Iron Co.]

W. H. DENSON, and T. C. CAREY, for appellant, cited *Ashurst v. Lehman*, 86 Ala. 370; *Satterfield v. John*, 53 Ala. 127; *Briarfield Iron Co. v. Foster*, 54 Ala. 622; *Durr v. Jackson*, 59 Ala. 203; *Glover v. Hembree*, 82 Ala. 327; *Chamberlain v. Parker*, 69 Ala. 40; High on Receivers, §§ 3, 7–10, 18, 19, 88, 89; Gluck & B. on Receivers, §§ 27, 115; Bigelow on Fraud, 114; Beach on Receivers, 151.

SPAULDING & PARKS, DAVIS & HARALSON, and TRUE PAGE PIERCE, *contra*, cited *Miller v. Lehman*, 87 Ala. 517; *McCullough v. Jones*, 91 Ala. 186; *Bolling v. Vandiver*, 91 Ala. 375; *Savage v. Memphis & Little Rock Railroad Co.*, 125 U. S. 361; *Simmons Hardware Co. v. Waibel*, 11 L. R. An. 267; Gluck & Becker on Receivers, §§ 33, 114, 196, 44; 5 Wait's Actions & Def. 371; 2 Story's Eq. Jur. 35.

STONE, C. J.—Each of the principal parties to this suit is a private corporation, having its business *situs*—its domicile, at Fort Payne. The Furnace Company owned and operated a blast-furnace, employed in converting iron-ore into iron. The Coal and Iron Company supplied coke and iron-ore to the Furnace Company. The present suit was instituted by original bill in the name of the Coal and Iron Company against the Furnace Company; and being in form a creditors' bill, Powell, on his petition, was allowed to come in as a co-complainant.

The bill avers that the Furnace Company was and is indebted to the Coal and Iron Company in a sum exceeding thirty thousand dollars. This claim is not in judgment. The petition and averments of Powell represent that the Furnace Company did and does owe him over three thousand dollars, which is in judgment. An amendment to the bill contains the charge that the Furnace Company was insolvent. The bill was sworn to April 30, 1892, and was probably filed at that time. The bill then avers that "on or about the first day of May, 1891, the defendant [Furnace Company] by order of its directors, which order was based upon the vote of the stockholders of respondent, directing the action of the directors, voted to issue its bonds, not to exceed the amount of $100,000, and executed by its proper officers a deed of conveyance to the Old Colony Trust Company, a body corporate under the laws of Massachusetts, on the 25th day of May, 1891, conveying all its property both real and personal. Said deed or conveyance was in trust for the benefit of the holders of the bonds, which were issued as above mentioned and set out. Complainant fur-

ther avers that respondent has issued and sold in pursuance of its said order the amount of about thirty-four thousand dollars worth of bonds."

The bill then avers that at a stockholders' meeting, held at Providence, Rhode Island, on February 17, 1892, "it was voted to empower directors to sell respondent's property, if it seemed to them best. That at a directors' meeting held in Providence, R. I., March 24, 1892, it was voted to sell said property at public sale in Fort Payne, Alabama, on the 9th day of May, 1892." Appended to the bill is a circular letter issued by the directors, appealing to the stockholders to purchase the bonds, as the only means of saving the property from sale, and from an entire sacrifice of all the corporation's effects in the payment of the thirty-four or thirty-five thousand dollars of bonds, previously disposed of. The property was advertised for public sale to the highest bidder, the sale to take place at Fort Payne, May 9, 1892.

The purpose of the present bill was to have the property placed in the hands of a receiver, and thus to prevent the sale. The register appointed a receiver, and on appeal to the chancellor he confirmed the appointment. There was also a motion to dismiss the bill for want of equity, which the chancellor overruled. From those two rulings of the chancellor the present appeal is prosecuted.

We have stated substantially all the material averments of fact contained in the bill, which bear on the questions before us. It is no where shown who were the purchasers, or who are the owners of the thirty-four or thirty-five thousand dollars of bonds, issued in 1891, or whether the governing body of the corporation, or any member of it, has any interest in, or claim to these bonds; and there is no semblance of charge that the directors, or any of them, have any interest in the sale proposed to be made. No charge is made of bad faith or fraud in the sale of the bonds, or that they were not sold for their value, and to *bona fide* purchasers. Nor is it shown when the bonds became due, nor on what event or default the mortgage or trust deed is to become due and a foreclosure had, according to the terms of the conveyance. No copy of the mortgage or trust deed is found in the record, and there is no attempt to set forth its terms or contents. For aught we know, the proposed sale was in literal compliance with the requirements of the mortgage.

We said we have stated substantially the averments of fact found in the bill. The bill, however, does contain the following averments : "Complainant charges that the proposed

sale on May 9, 1892, is a fraudulent scheme concocted for the purpose of selling said property so that there can be no redemption, and thereby secure to the bond-holders the entire property in exclusion of all other creditors or stockholders. Complainant charges and avers that, as will be shown by reference to exhibit A, that unless checked in their fraudulent and unwise course, all the property of respondent, to the amount of fully one hundred thousand dollars worth, will be sold by said directors for the small sum of thirty-four thousand dollars to the holders of respondent's bonds, and the complainant and all other creditors and the stockholders in respondent's corporation will entirely lose their debts and stock. And complainant avers that said directors of respondent corporation are fraudently conniving with the bondholders of respondent to sell all the property of responnent for simply the amount of the bonded indebtedness to the holders of the bonds, and that they have advertised and proposed at said sale to take in payment for the property of said respondent the bonds outstanding of respondent,—and no effort has been made, or is being made, to pay its general indebtedness; and it is their purpose to sell it for no more than the amount of the outstanding bonds. Complainant charges and insists that such a sale as that contemplated by respondent, and shown by the exhibits hereto, would be a fraud in law, and in fact, on all the general creditors of respondent, and a clear loss to its stockholders. That its property would be sacrificed for the benefit of the bondholders, while the stockholders and general creditors would be cut entirely off from any benefit of the sale, and lose their debts and holdings."

Exhibit A, referred to in the above extract, furnishes no evidence of an intention or desire on the part of the directors to sell the property for only enough to pay off the bonds. That paper was an appeal to the stockholders to come to the relief of the corporation, by purchasing its bonds; and as an argument to induce a favorable response, they expressed the belief or conviction that if relief was not given, the property at such forced sale would not yield more than enough to pay the bond debt. A further remark: The sale was to be public, and to the highest bidder. For aught that is shown in this record, there was no lien on the property beyond the $34,000 bonded indebtedness, secured by the mortgage. Any one could claim to bid at the public sale, and any surplus the property might yield over the amount of the bonds, would go to the other creditors till they were paid; and if any balance was left, that would go to the stockholders.

[Fort Payne Furnace Co. v. Fort Payne Coal & Iron Co.]

A mere general averment of fraud, as that a conveyance, or a sale or other disposition, made or threatened, was or is with fraudulent intent, is not sufficient in pleading. Fraud is a conclusion. The conduct and facts from which the conclusion is deduced must be averred, so that issue can be formed on the averments. We do not mean that all the details must be given, but the substantial facts which constitute the bad faith must be set out. And to obtain relief, they must be proved, if denied.—Story Eq. Pl. § 251a; *Flewellen v. Crane*, 58 Ala. 627; *Pritchett v. Pippin*, 64 Ala. 520; *Chamberlain v. Dorrance*, 69 Ala. 40. The bill in this case is insufficient, and should have been so pronounced in the court below.

We can not know whether the facts in this case are such as to authorize an amendment of the bill so as to give it equity. We will therefore make no final order of dismissal. See *Gay, Hardie & Co. v. Brierfield Coal & Iron Co.*, 94 Ala. 303; *Carey v. Wadsworth*, (in Mss.); *Gibson v. Trowbridge Furniture Co., ante p.* 357; *Birmingham M. & M. Co. v. Mutual Loan & Trust Co., ante* p. 364; *Goodyear Rubber Co. v. The Geo. D. Scott Co., ante* p. 439. These are cases of the present term.

Is this case one which authorized the appointment of a receiver? In 3 Pomeroy's Equity, § 1431, it is said, "The appointment of a receiver is, as a general rule, discretionary. The discretion is not arbitrary or absolute; it is a sound and judicial discretion, taking into account all the circumstances of the case, exercised for the purpose of promoting the ends of justice, and of protecting the rights of all the parties interested in the controversy and subject-matter, and based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the judicial proceeding." This learned author divides the cases in which receivers should be appointed into four classes: "The first class contains those cases where there is no person entitled to the ropperty, who is at the time competent to hold and manage it during the judicial proceeding."—§ 1332. This class embraces the estates of infants, lunatics, and deceased persons, when it becomes necessary to have them preserved, pending litigation. "The second class of cases is based upon the fact that all of the parties are equally entitled to the possession of the property which is the subject-matter of the controversy, but it is not just and proper, from the nature of the dispute and of their relations with each other, that either one of them should be allowed to retain possession and control during the litigation."—§ 1333. Contro-

versies between co-partners and between tenants in common, and similar contentions, fall within this class. "The third class embraces those cases in which the person holding title to the property is in a position of trust or of *quasi* trust, and is violating his fiduciary duties by misusing, misapplying, or wasting the property, and is thereby endangering the rights of other persons beneficially interested."—§ 1334. This class takes in the whole field of trusts and fiduciary holdings of property; and may be invoked by persons interested, if their rights exist *in presenti*, and sometimes, when their interests are only *in futuro*. "*Fourth class*. This class contains those cases in which a receiver is appointed after judgment, for the purpose of carrying the decree into effect." § 1335. It would also take in the matter and duty of appointing a receiver, whenever property or effects are discovered in proceedings under sections 3544–5 of the Code of 1886, if it becomes necessary to have such property and effects reduced to possession, or otherwise cared for; and preserved pending the litigation.—*Montgomery & Florida Railway Co. v. McKenzie*, 80 Ala. 546; s. c., *ante* p. 465. See, also, 1 Daniel Ch. Pr. 1715 *et seq.;* Beach on Receivers, §§ 4 *et seq.;* High in Receivers, §§ 5 *et seq.*

The power to appoint receivers is, in all cases, exercised with great caution. There must be a legal or equitable right, reasonably clear and free from doubt, attended with danger of loss. The preservation of the subject of the controversy for the benefit of the party who will, ultimately, be decreed to have the right, is the object of committing it to the custody of a receiver.—*Hughes v. Hatchett*, 55 Ala. 681; *Randle v. Carter*, 62 Ala. 95.

"Peril of the trust fund alone moves the court to displace the trustee from the exercise of his legal rights over the trust funds, pending litigation against him; and unless such peril is shown by specific allegations supported by clear proof, the court ought not to interfere."—*Satterfield v. John*, 53 Ala. 127. See, also, *Sims v. Adams*, 78 Ala. 395; *Ashurst v. Lehman*, 86 Ala. 370; *Moritz v. Miller*, 37 Ala. 331; *Thompson v. Tower Manufacturing Co., Ib.* 733; *Simmons Hardware Co. v. Waibel*, 11 Lawyer's An. Rep. 267.

In Gluck & Becker on Receivers, §§ 27, 118, in this language: "It is not the province of a court of equity to take possession of the property, and conduct the business of corporations, except when the exercise of such extraordinary jurisdiction is indispensably necessary to save or protect some clear right of a suitor, which would otherwise be lost or greatly endangered, and which can not be saved or pro-

[Fort Payne Furnace Co. v. Fort Payne Coal & Iron Co.]

tected by any other action or mode of proceeding." In 5 Wait, Ac. & Def. 355, it is said, "The appointment [of a receiver] is usually made for one of the following purposes: to prevent fraud, protect the property from injury, or preserve it from destruction."

In Kerr on Receivers, 5, that author employs this language: "The court, by taking possession at the instance of plaintiff, may be doing a wrong to the defendant; in some cases an irreparable wrong. If the plaintiff should eventually fail in establishing his right against the defendant, the court may, by its *interim* interference, have caused mischief to the defendant, for which the subsequent restoration of the property may afford no adequate compensation."

In *Brierfield Iron Works v. Foster*, 54 Ala. 622, this court said, "The authority to appoint receivers should be used by a chancellor with great circumspection. Property is not taken from a party in possession, claiming in good faith the right to it, before judgment in actions at law, without first exacting from him at whose suit it is done ample security for the protection of his adversary against injury. Neither a writ in detinue, nor a writ of attachment for the seizure of property, can be obtained until the person suing it out shall execute an adequate bond with good sureties for the indemnification of the defendant against all loss he may thereby unjustly sustain. In courts of equity, writs of injunction and equitable attachment are allowed only upon like conditions; and a compliance with them is required by express statutory enactments. And whenever either of these writs will afford all needed protection to rights asserted by a plaintiff in a court of equity, and these rights are disputed, it should rarely appoint a receiver to take the property from the defendant; receivers being appointed ordinarily without indemnifying bonds being required of those procuring the appointment to be made, and only upon the bond of the receiver with sureties for his fidelity as such. There has been, indeed, too much facility on the part of chancellors and registers in the exercise of this authority."

We hold that, if the bill in this case be so amended as to give it equity, it would still, so far as we can now see, fail to present a case for a receiver. Injunction would probably be the proper remedial writ. We do not announce what would be our ruling, if it were shown that the governing body and management were acting faithlessly, or were wasting or destroying the property of the corporation. The present bill fails to show such is the case.

[Fort Payne Furnace Co. v. Fort Payne Coal & Iron Co.]

The order appointing a receiver is reversed, and the re-receiver will come to a proper settlement in the Chancery Court. And, unless the bill is so amended as to give it equity, the proper order will be made by the chancellor dismissing it out of his court.

Reversed and remanded.