# Etowah Mining Co. v. Wills Valley Mining & Manufacturing Co.

*Bill in Equity by Creditors of Corporation for Appointment of Receiver.*

1. *Receiver; appeal to chancellor from appointment by register; how considered.*—On appeal to the chancellor from an order of the register appointing a receiver, the chancellor's jurisdiction is not simply

[Etowah Mining Co. v. Wills Valley Mining & Manufacturing Co.]

appellate, but the question comes before him as on original petition, and he has authority to extend the time of hearing, to grant either party leave to file additional affidavits and to admit any other competent evidence bearing on the issue.

2. *Same; when appointment should be made.*—A receiver should never be appointed when any other remedy will afford ample protection to those applying for relief ; and where a private business corporation has conveyed all its property and assets to a trustee for the benefit of its creditors, with full power to continue or wind up its business as may be to the best interest of its creditors and stockholders, the trustee is invested with every power that could be possibly conferred upon a receiver, and there exists no necessity for the latter's appointment.

3. *Same; appointment at suit of creditors of a corporation.*—The legal ground upon which creditors can ask for the appointment of a receiver of their debtor's property is that their best interest will be conserved by a condemnation and sale of the debtor's property ; and creditors of a private corporation cannot invoke the powers of a court of chancery to remove a trustee to whom the corporation conveyed all its assets for the benefit of its creditors. with full power to manage its affairs and continue or cease business, as may be to their best interest, and to have in his stead a receiver appointed, for the purpose of indefinitely continuing the business until the creditors are paid out of the income, and not merely to hold *pendente lite* for the removal of the trustee ; the court having no such power, since upon the appointment of a receiver, it becomes the duty of the court to wind up the business of the corporation as speedily as possible, consistent with the creditors' interests.

4. *Same; rights of creditors under a deed of trust for their benefit.*— Where a private business corporation has conveyed all of its assets for the benefit of its creditors to a trustee with full power to manage and continue or cease the business, as the creditors' best interest might require, the fact that said. trustee is incompetent or unfaithful does not authorize his removal and the appointment of a receiver ; since a court of equity has the right at the suit of those beneficially interested to require, and it should require, the trustee to furnish ample surety to secure the preservation of the trust assets and the proper administration of the trust, or to remove him and substitute another who is suitable, or if the interest of those beneficially interested demands a continuation of the business, the court, by injunctive process, can restrain the winding up of the business until the rights of all are ascertained and adjudicated.

5. *Same; who should be appointed.*—The person appointed receiver by the court should be capable, honest, impartial and without personal interest to be subserved ; and when the evidence shows that the person appointed receiver of a corporation, has a direct interest antagonistic to a right attempted to be asserted by said corporation, his appointment should be annulled.

[Etowah Mining Co. v. Wills Valley Mining & Manufacturing Co.]

APPEAL from Chancery Court of Etowah.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed by the appellees against the appellants. The facts of the case are sufficiently stated in the opinion. The appeal is prosecuted by the respondent from a decree of the chancellor confirming the appintment of a receiver by the register, and this decree of the chancellor is assigned as error.

DENSON & BURNETT and PRITCHARD & SIZER, for appellant.—The receiver in this case was wrongly appointed. There was shown by the bill no case for his appointment. There must be the concurrence of two grounds : 1st. A reasonable probability of success on the part of the complainant; and 2d, the subject matter of the controversy must be in danger. Neither of these grounds is shown. And further, when the title of the complainant is doubtful, or his rights disputed, he can obtain redress by injunction or attachment, but not by the appointment of a receiver.—*Ft. Payne Furnace Co. v. Ft. Payne C. & I. Co.*, 96 Ala. 472 ; *Ashurst v. Lehman*, 86 Ala. 370 ; *Randle v. Carter*, 62 Ala. 95 ; *Briarfield Iron Works v. Foster*, 54 Ala. 622 ; *Hughes v. Hatchett*, 55 Ala. 631.

GOODHUE & SIBERT, *contra.*

COLEMAN, J.—On the 14th day of March, 1894, complainants, as creditors of the Etowah Mining Company, filed their bill in the chancery court against the Etowah Mining Company, a corporation, W. M. Nixon, trustee, and M. L. Robinson ; and at the same time upon petition the register appointed a receiver without notice. The respondents appealed to the chancellor from the order of the register appointing a receiver. The present appeal was taken from the ruling of the chancellor confirming the appointment of the receiver by the register. The appellees contend that the jurisdiction of the chancellor on appeal from the register was only appellate, and that it was not permissible for the appellant to introduce any evidence other than that upon which the register acted. This contention was demonstrated to be unsound and not tenable in the case of *Heard v. Murray, Dibbrell & Co.*, 93 Ala. 127. On appeal to the chancellor the

question came before him as on original petition, after notice, and was determined by him on its merits. He had authority to extend the time of hearing and to grant either party leave to file additional affidavits or admit other competent evidence of any character, bearing on the issue. The question before us is, whether the discretion reposed in the court to appoint a receiver, under all the circumstances, was judiciously exercised. The Etowah Mining Company is a private corporation, organized for the benefit of its stockholders and no others, and its chief purpose was to make money for the owners of the stock. On the 29th day of July, 1893, some seven or eight months previous to the filing of the bill, the Etowah Mining Company conveyed to W. M. Nixon by deed of trust all of its effects, consisting of real and personal property, choses in action, rights and interests, which included a lease of mining lands for a period of five years with the right to elect a renewal for a period of five additional years, upon certain conditions, and if not renewed, the leased property was to be returned, with covenants and obligations on the part of the lessors to pay for permanent improvements placed upon the leased property, and certain designated personal property. The trustee, Nixon, was invested with full power to manage, control, sell, improve, continue or cease the mining business, as to him might seem best for the benefit of the creditors of the Etowah Mining Company and its owners. His powers were very extensive. Complainants in their bill do not impeach the validity of the deed of trust. We presume from the averments of the bill, and from written argument of counsel for appellees, that they claim to be beneficiaries in the deed of trust and entitled to the benefit of its provisions. The bill charges that the Etowah Mining Company is insolvent, and charges the trustee with waste, mismanagement, unskillfulness, collusion with M. L. Robinson, a sister, in recognizing as due her a simulated claim, also the recognition of a debt claimed to be due E. M. Nixon for fifteen thousand dollars, and in a general way, without facts, avers that the trustee is insolvent. The bill does not pray for a dissolution of the corporation, or for a sale of its property, for the payment of claims due its creditors. It contemplates a continuance of the business, apparently for an indefinite time, but

instead of being operated by a trustee, as provided in the deed of trust, it is to be operated by the court through a receiver. The Wills Valley Mining & Manufacturing Co., one of the complainants, is also a corporation. It became a creditor in this way: The original lessors, five in number, transferred and conveyed to the Wills Valley Mining & Manufacturing Company their title and interest in the mining lands leased to the Etowah Mining Company and their interest in the lease. The lessors are the stockholders of the Wills Valley corporation. If it owns any other property or has any business to perform other than to collect the royalty from the Etowah Mining Company for the stockholders who were the lessors, it is not disclosed. These facts do not appear in the bill of complaint, but are made manifest in the answer of the respondents to the bill and *ex parte* affidavits, which were before the chancellor for his consideration. By the provisions of the lease, the lessee agreed to pay monthly a royalty of ten cents per ton, for five years, and after that time, if it elected to continue the lease for another period of five years, fifteen cents per ton. Ordinarily a creditor's interest is best served by the condemnation and sale of his debtor's property, and its appropriation to the payment of his claims. This at least is the only legal ground upon which creditors of a private business corporation can ask that property be taken from the possession of its owner, and placed in the hands of a receiver. A few days before the filing of the bill, W. M. Nixon, the trustee, gave notice to the lessors that the Etowah Mining Company, the lessee, declined to elect to continue the lease, and that on the 18th of March, 1894, he would surrender the lease and property and would demand payment from the lessors, for the improvements and property, as stipulated in the lease contract. The lessors' contention is, that the first five years expired in November, 1893, and that by holding over until March, 1894, the lessee had made its election, and was bound for the additional period of five years and the increased royalty. We do not think a construction of the provisions of the lease necessary to determine the question of the appointment of a receiver. The other creditors have not the same interest involved in the continuance of the lease as the stockholders of the Wills Valley Min-

ing & Manufacturing Company. The only interest of the former is, in securing the payment of their present accrued claims. We know of no principle of law which justifies a court of chancery to take possession of property admitted to be that of a private corporation, whether conveyed to a trustee or not, merely for the purpose of running its business indefinitely through a receiver to realize an income for the benefit of its creditors until they are paid from this source. A receiver appointed for creditors to take possession of property of a corporation acts under the orders of the court, and cannot be controlled by its directors or stockholders. By the appointment of a receiver in the interest of creditors of a corporation, it becomes the duty of the court to wind up its business as speedily as possible, consistent with the interest of the creditors. Again, a receiver should never be appointed, when any other remedy will afford ample protection to those applying for this remedy. We may well inquire, what power has the receiver in this case, or what duty is he to perform, that the trustee, under the terms of the trust, was not required and authorized to exercise and perform ? If a trustee is incompetent, wasteful, or is making fraudulent and collusive appropriations of the assets, to the injury of creditors, a court of equity ought to intervene, at their instance, and preserve the property for their protection. The end in view in appointing a receiver under such circumstances is not to continue the business, but to apply the assets to the claims of creditors. Whenever a trustee has authority to conduct a business and those beneficially interested desire the continuation of such business, and the trustee is unfaithful or incompetent, the remedy is to require that he furnish ample security for the protection of those interested, or that he be removed, and another who is suitable be substituted. It would be an extreme case, if such could exist, which would call for the appointment of a receiver to execute an express trust continuous in its character, and not merely to hold *pendente lite* for the removal of the trustee. These general principles of law are sustained by the authorities which declare the conditions under which a receiver may be appointed, and the nature and duties of his office, and those pertaining to the office and duties of a trustee.—*Fort Payne Furnace Co. v. Fort*

*Payne Coal & Iron Co.*, 96 Ala. 472 ; 3 Pomeroy Eq. Jur., § § 1331–1334 ; High on Receivers, § 692.

Independent of these considerations, have complainants offered sufficient proof, *ex parte* or otherwise, in support of the averments of their bill, to justify the court in acting upon them as true ? As to the charge of collusion and fraud in respect to the claims of M. L. Robinson and E. M. Nixon : It appears that the debt of M. L. Robinson, as it originally existed, was a claim against the Attala Company, secured by mortgage. The assets of the Attala Company, including the mortgaged property, were transferred in the year 1891 to the Etowah Mining Company, which assumed the payment of the mortgage debt. There is no proof tending to show that this is not a *bona fide* debt, nor that the property mortgaged to secure it, is not ample for that purpose. The only rights of complainants to the property or assets which formerly belonged to the Attala Mining Company are through and by virtue of the transfer and conveyance of this property to the Etowah Mining Company. The transfer was encumbered with the mortgage to secure the Robinson claim.

The charge that the trustee had recognized and assumed to pay a fraudulent claim of fifteen thousand dollars to E. M. Nixon seems to have been utterly exploded. According to the *ex parte* data, which is not controverted, this claim amounts to only about seven thousand dollars.

The bill avers that the Etowah Mining Company is insolvent. We have gone through the two hundred pages of *ex·parte* affidavits, and exhibits, *pro* and *contra* the averments of the bill, and the only satisfactory data to show the financial condition of the Etowah Mining Company is that furnished by the trustee Nixon. He alone gives a list of the debts of the company and schedule of the assets. If his affidavit is received as true, the company is more than able to pay all demands. On the other hand, if we accept as true his statement of the indebtedness (and there is no other) and reject his valuation of the property, and take the valuation of the complainants, we are not satisfied that it is insolvent. A property owing no more, and capable of yielding under proper management a net profit of from twelve to fifteen hundred dollars monthly, as averred in the bill and

sworn to in *ex parte* affidavits offered by the receiver, and a going concern at that, cannot be regarded as insolvent, so as to justify the appointment of a receiver on the grounds of its insolvency.

Excluding from consideration the charges of fraud and collusion against the trustee, and regarding only that of incompetency, without saying more, we are not prepared to hold that this averment is clearly sustained. The affidavits are very conflicting on this issue, but affiants on the part of the respondent seem to have had more experience in the business of mining ore. We are merely considering the question of the appointment of a receiver, and not evidence which may be taken on any proceeding looking to a removal of the trustee, or his accountability for waste and mismanagement.

The bill charges that the trustee is insolvent. In all the mass of affidavits, not one except the appointed receiver, makes affidavit that he is insolvent; and this is made as a general conclusion without the statement of a single fact, upon which issue could be taken. The trustee in his answer, which is sworn to and was before the chancellor, positively denies the averment of insolvency.

A serious and somewhat difficult question arises from the stipulation of the lease, and the different constructions placed upon it by the litigants, and the consequences which may result from the one or the other construction. The complainants sue as creditors, and contend that the lease is a valuable asset, and by holding over the Etowah Mining Company has acquired the legal right to the interest in the same for an additional period of five years. On the other hand, the respondent contends, that it has not held over, and declines to elect to claim the additional term and makes tender of the property with the demand for payment for improvements and outfit, as provided in the lease. It further asserts, that to attempt to operate the mines and pay the increased royalty, will endanger the interest of its creditors and impoverish the Etowah Mining Company and destroy the interest of the stockholders. The lease bears one date, but it is contended that a majority of the lessors did not in fact sign until long afterwards, and that there was no delivery of the lease to give it effect until several months subsequent to its date. There is another provision of the

lease as to whether loss of time, caused by strikes, and deficient railroad facilities, should be deducted so as not to be computed as a part of the term of five years. In one view of the case, whether correct or not we do not intimate, the time when the term expired may depend on the ascertainment of controverted facts. The bill does not ask for the appointment of a receiver to preserve the property *pendente lite*, but its evident purpose is to operate for the renewed term of five years, and pay the increased royalty. But suppose the bill should be amended in this respect, is the appointment of a receiver the proper remedy? Suppose in the end, the court should decide these issues for the defendant, and in the meantime the leased mines have been operated and the valuable outfit should have become worn out and useless, to the great loss of the Etowah Mining Company. Is it right that the company should have no redress? Certainly if the mines are operated by the court through a receiver, the Etowah Mining Company must bear whatever loss results. Cases may arise where damage and losses are unavoidable, but such possible consequences should not be hazarded except in cases of imperative necessity. The deed of trust confers upon the trustee every power that could possibly be conferred upon a receiver. The trustee in this case offered to make any bond that the court might deem necessary. The court has the right and it should require surety of a trustee when necessary to secure the preservation of the trust assets and proper administration of the trust, and, if the trustee is incompetent, to remove him and appoint another in his stead.

By the injunctive process of the court, issued upon bond of complainants, payable to the respondent, the Etowah Mining Company and trustee, or the register, as may be directed, with good security, the respondent may be enjoined from ceasing to work the ore mines and leased property *pendente lite*, and by the use of both of these remedies (surety of the trustee, and the injunction bond) both litigants be fully protected until the rights of all are ascertained and adjudicated.

We are fully convinced under the facts of the case, that the receiver selected was not a suitable person. A receiver appointed by the court should be capable, honest, impartial and without personal interest to serve.

[Randolph v. Builders & Painters Supply Co.]

Pretermitting all reference to those acts and circumstances occurring between the time of his appointment by the register and the hearing of the appeal by the chancellor, which led him to state in his opinion, that "there is much evidence tending to show great incompetency and many crooked ways in the receiver's conduct," and which alone would have justified his removal at least, the uncontradicted evidence shows, that, as a stockholder of the Wills Valley Company, he has a direct interest in having the mines worked for an additional period of five years under the provision for an increased royalty, and may be vitally interested in the obligation of the lessors to take and pay for all permanent improvements and the outfit of the Etowah Mining Company at the termination of the lease.

The complainants as creditors have the undoubted right to call the trustee to an accounting.

A decree will be here rendered, reversing and annulling the appointment of a receiver, and an order made requiring him to restore the property to the trustee, who should file with the register an inventory of all that is returned to him and its condition, and that the receiver proceed to a statement of account and settlement of his receivership. The cause is remanded for further proceedings in accordance with the principles herein declared.

Reversed, rendered in part, and remanded.